(C.D. 3876)

Hudson Shipping Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided August 7, 1969)

*Allerton deC. Tompkins* (*Margaret Lynch O'Connor* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The protests listed in schedule "A," attached hereto and made a part hereof, consolidated for the purpose of trial contest the classification of certain hydraulic matrix molding presses. The merchandise was classified under the provisions of paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device and assessed with duty at the rate of 13¾ per centum ad valorem.

Plaintiff's principal claim is that said articles are machines and do not have as an essential feature an electrical element or device. Classification is therefore claimed under the provisions for machines, not specially provided for, as provided for in paragraph 372, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which imposes duty at the rate of 11½ per centum ad valorem.

The pertinent portions of the statutes involved read as follows:

Paragraph 353, as modified, *supra:*

> Articles having as an essential feature an electrical element or device * * *:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

> Other (except * * *)_____ 13¾% ad val.

Paragraph 372, as modified, *supra:*

> Machines, finished or unfinished, not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

> Other (except * * *)_____ 11½% ad val.

The record consists of the oral testimony of one witness called on behalf of plaintiff and 4 exhibits, 3 received on behalf of plaintiff and 1 on behalf of defendant. The merchandise as imported did not con-

tain an electric motor for motive power but did contain a solenoid, a timer and a partial heating element. The operation of the machine was described by the witness as follows:

> Q. How does it work? Can you describe it please—A. To answer the first portion of your question, how it works, it is a machine basically mechanically operated by hydraulic pressure. Number two, the machine has essentially a cylinder in its lower portion, and in this cylinder a piston is fitted. When hydraulic pressure, such as water or hydraulic fluid, is pumped under this piston this piston moves upwardly until it reaches a point of resistance. Then the pressure increases up to a desired and previously adjusted point, and forms there the embossing of a so-called Matrix, which is a moistened part or piece of sort of cardboard. Then the pressure, after a short while, is removed, and the item which had been embossed is taken off.

The record establishes that while electric power is the source ordinarily used, any form of motive power could be utilized without any modification of the machine per se. However, a longer belt would be required to transmit the motive power if a source other than an electric motor was used. Insofar as the solenoid is concerned, which is used to open and close valves, it is not essential. The machines provide for a hand lever which performs the same function and can be operated just as efficiently, depending upon the skill of the operator.

The timers, if nonoperational, would not effect the operation of the machine. The only instance the timer would be necessary is when it is on automatic operation. The imported merchandise in its basic form is a cold molding machine and the optional hot molding feature is not efficient and requires installation of additional heating elements in the United States.

At the outset, it should be noted that plaintiff alternatively claimed under the provisions of paragraph 372, *supra*, for printing machinery and under paragraph 353, *supra*, for electric motors. Neither of these claims having been pressed are deemed abandoned. The protests insofar as those claims are concerned are therefore dismissed.

The issue presented herein, as to what constitutes an "essential" electrical feature is not a novel one. There has been incessant litigation on this point. The only novel question in cases of this kind is whether the particular electric feature is essential. A case which has frequently been cited and quoted on this subject is *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050 (1934), wherein the court stated "The electrical feature must be an essential feature, without which the article will not function, normally, for the purpose intended, * * *." However, if the substitution of a nonelectric feature for the electrical one can be made without modification, and after the substitution has been effected the article will function normally for the purpose for which

it was intended, the electric feature is nonessential and paragraph 353, *supra*, would not apply. *Ralph C. Coxhead Corp.* v. *United States*, 22 CCPA 96, T.D. 47080 (1934).

In the case at bar it has been established to the satisfaction of the court, insofar as the solenoid and timers are concerned that they are not essential under the principles enunciated in the above cases. A hand lever is provided for which accomplishes the function of the solenoid and the timers would only be essential for automatic operation. The imported article can be operated for its intended purpose without these electrical features and without modification to the machine per se.

The partial heating element is not deemed by the court to be essential for tariff purposes since the record clearly establishes the imported article in its basic form to be a cold molding machine. A provision for hot molding is made as an optional feature but the record here establishes that additional heating elements must be added in the United States to make it operate efficiently. We are of the opinion that, for tariff purposes, the partial heating element is not essential and therefore not within the purview of paragraph 353, *supra*.

There is no question as to the motive power bringing the merchandise within the purview of paragraph 353, *supra*, since the articles were imported without electric motors as in the case of *United States* v. *Baker Perkins, Inc., R.F. Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714 (1959). The court therein held that certain cocoa liquor grinding mills imported without electric motors for motive power were not classifiable as having as an essential feature an electrical element or device notwithstanding the intention to install an electric motor and operate the machine in this manner in this country. The basic principle that an article is dutiable in its condition as imported was used as a premise for this finding.

In the case at bar the machine was imported without any motive power and following the *Baker Perkins* case, *supra*, the mere contemplation of the use of electric power is not sufficient to constitute the merchandise as having as an essential feature an electrical element or device as that term is used in paragraph 353, *supra*.

An examination of the photographic exhibits of the imported article and the description of the operation leads us to the conclusion that the imported articles are, for tariff purposes, machines as provided for in paragraph 372, *supra*, as claimed. *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756 (1960); *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786 (1961); *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820 (1963).

The protests, insofar as the claim under paragraph 372, *supra*, is concerned, are sustained.

Judgment will be entered accordingly.